# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

NATAN TORRES,

      **Plaintiff,**

vs.                                  Case No. 4:15cv464-RH/CAS

FLORIDA DEPARTMENT
OF CORRECTIONS,

      **Defendant.**

_____/

## SECOND REPORT AND RECOMMENDATION

Defendant removed this case from state court on September 25, 2015. ECF No. 1. The pro se Plaintiff's complaint has been filed in this case as document 11. Previously, Defendant's motion to dismiss, ECF No. 7, was denied, and Plaintiff's motion for a temporary injunction, ECF No. 13, was denied. ECF Nos. 16, 21. Noteworthy is the fact that the Motion to Dismiss argued that Mr. Torres "never attempted to challenge the Rule via a 'Petition to [I]nitiate [R]ulemaking' as allowed for in § 120.54(7), Fla. Stat." ECF No. 7 at 3. Thus, the Department argued that this action "should be dismissed because Plaintiff failed to exhaust his administrative

remedies pursuant to the requirements of the PLRA, 42 U.S.C.

§ 1997e(a)." *Id.* at 4. That argument was rejected. ECF Nos. 16, 21.

After the conclusion of discovery, *see* ECF No. 23, Defendant filed an amended answer, ECF Nos. 42, 50, and 51, and a motion for summary judgment, ECF No. 54. Plaintiff filed a response to that motion, ECF No. 62, and then an amended response, ECF No. 65. Defendant filed a reply, ECF No. 66, which addressed both Plaintiff's initial response and the amended response, ECF No. 65.[1]

Plaintiff filed a "Motion for Judicial Acknowledgment," ECF No. 69, on December 14, 2016. The nature of that document, however, revealed that Plaintiff was attempting to submit an unauthorized sur-reply to Defendant's reply, ECF No. 66. Plaintiff argued that Defendant's reply to his response to Defendant's motion for summary judgment "raised 'ficticious' [sic] claims" which Plaintiff sought to correct. ECF No. 69 at 2. Plaintiff did not request leave to file that pleading, and an Order was entered advising the parties that it would not be considered in ruling on summary judgment. ECF No. 70. Thereafter, Plaintiff submitted another document, this time entitled, "Plaintiff's 'Objections' Concerning Defendant's Ficticious [sic] Claims." ECF No. 71. Again, Plaintiff is seeking to correct assertions made in

---

[1] Only Plaintiff's amended response, ECF No. 65, has been considered.

Defendant's reply. *Id.* Thus, Plaintiff's "objection," ECF No. 71, will not be considered either.

Plaintiff also filed his own amended motion for summary judgment. ECF No. 58. Defendant filed a response, ECF No. 64, and Plaintiff submitted a reply, ECF No. 68. Accordingly, those documents are considered along with Defendant's motion for summary judgment, ECF No. 54, Plaintiff's amended response, ECF No. 65, and Defendant's reply, ECF No. 66. In addition, Defendant filed a notice of supplemental authority, ECF No. 67, on November 16, 2016, and a second notice of supplemental authority, ECF No. 73, on March 24, 2017. The supplemental authority is a Report and Recommendation entered in case number 3:09cv224-WS-EMT, ECF No. 67, and the second filing is the Order Adopting the Magistrate Judge's Report and Recommendation, ECF No. 73. Both summary judgment motions are ready for a ruling.

**The Complaint, ECF No. 11**

Mr. Torres seeks a declaratory judgment to declare the Department's "UCC Contraband Rule"[2] invalid because it is "void for vagueness" and

---

[2] Mr. Torres declares throughout his complaint that he is challenging the "UCC Contraband Rule." ECF No. 11 at 3, 4, 5, 6, 7. He specifically cites to Rule 33-602.203(7), ECF No. 11 at 4 and 7, but did not provide a copy of the Rule with his complaint. The Rule was previously submitted with Defendant's motion to dismiss, ECF No. 7-2, cited by Defendant in the motion for summary judgment, *see* ECF No. 54 at 23-

because it is arbitrarily applied. ECF No. 11 at 3-4, 6. He asserts that the rule "infringes inmates' state and federal constitutional and statutory due process of law rights to 'legitimately' possess, study, and practice UCC private administrative remedies and processes . . . ."[3] *Id.* at 4. Mr. Torres alleges that prison officials placed him in administrative confinement and confiscated his "property due to 'mere legal possession' of UCC study materials 'absent any fraudulent practices'" or the attempt to commit such practices. *Id.* at 7. He contends he has been subjected to "[a]rbitrarily imposed . . . disciplinary reports (DRs) with hearing[s] conducted via 'partial'" prison officials. *Id.* Plaintiff also complains of prohibited mail from

---

24, and Plaintiff provided a copy of the Rule in his summary judgment materials. ECF No. 58 at 26-27. The Rule concerns "Control of Contraband" in Florida prisons. Subparagraph 7 is the relevant portion of the Rule challenged by Mr. Torres. It became effective on November 28, 2011, *see* ECF No. 7-2 at 1, and provides:

> No inmate shall manufacture or possess any forms that may be used in the fraudulent filing of Uniform Commercial Code liens and/or publications that promote this practice. An inmate shall not possess any Uniform Commercial Code (UCC) Article 9 form, including but not limited to any financing statement (UCC1, UCC1Ad, UCC1AP, UCC3, UCC3Ad, UCC3AP), or correction statement (UCC5), whether printed, copied, typed or hand written, or any document concerning a scheme involving an inmate's "strawman," "House Joint Resolution 192 of 1933," the "Redemptive Process," "Acceptance for Value" presentments or document indicating copyright or attempted copyright of an inmate's name absent prior written authorization from the warden.

ECF No. 58 at 26-27 (Fla. Admin. Code R. 33-602.203(7)).

[3] The Department also construes the complaint as alleging a First Amendment claim for the violation of his right to free speech. ECF No. 7 at 1-2.

"sovereign and state agencies, departments, offices, banks," and the like "concerning any and all . . . UCC private administrative remedies and processes" between 2012 and 2015.  Id.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[4] the court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), "only if

---

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci, 557 U.S. at 586, 129 S. Ct. at 2677).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F. Supp. 2d at 1297-98)). Because Plaintiff (as the party with the burden of proof) has a heavier burden on summary judgment, the Court will consider the Defendant's motion first. If Defendant's motion is denied, the Court will consider whether Plaintiff is entitled to judgment as a matter of law.

**Relevant Rule 56 Evidence**

On January 3, 2013, Mr. Torres was issued a disciplinary report (log # 106-130021) for "possession of contraband" by Officer Bedsole. ECF No. 54-3 (Ex. B). The disciplinary report states that Mr. Torres was "charged with a violation of F.A.C. Chapter 33-601.314, Rules of Prohibited Conduct, 3-12, Possession of any other contraband."[5] *Id.* The "statement of facts" section of the disciplinary report explains that Officer Bedsole was directed to search Mr. Torres' "property for any unauthorized UCC (Uniform Commercial Code) paperwork." *Id.* While searching his property, Officer Bedsole "found numerous UCC paperwork inside" Mr. Torres' locker. *Id.* The report states that "photos of the contraband" were attached to the DR, although no photographs were presented with the copies of the disciplinary report[6] filed with the Court. *Id.*; *see also* ECF No. 65 at 28. The materials were seized as contraband. ECF No. 65 at 23-24.

---

[5] Thus, Mr. Torres was charged with violating Rule 33-601.314, 3-12. Judicial notice is taken of that Rule, effective date 10-1-2011, which states that "possession of any other contraband or transfer of item to another inmate resulting in item becoming contraband" carries a maximum disciplinary penalty of 15 days in disciplinary confinement and 30 days of gain time. It related to Rule 33-602.203(7), the one challenged in this case, because that Rule defines contraband and the "control of contraband." ECF No. 58 at 26-27.

[6] The report was written on January 7, 2013, for materials found on January 3, 2013. ECF No. 65 at 28. Mr. Torres was delivered a copy of the disciplinary report on January 10, 2013, at 10:30 a.m. *Id.*

Mr. Torres submitted a grievance challenging the DR and argued that he was not shown the "alleged photos of the contraband." ECF No. 65 at 31. His grievance was denied because he "plead guilty" to the charge. ECF No. 65 at 32; *see also* ECF No. 54-3 at 2 (Ex. B). The DR log materials reveal Mr. Torres declined staff assistance, he was given more than 24 hours notice of the charge, and was found guilty "based upon" his plea of guilty on January 14, 2013. ECF No. 54-3 at 2 (Ex. B). He was sentenced to 15 days of disciplinary confinement, but did not have any gain time forfeited. *Id.* Because Mr. Torres entered a guilty plea, no disciplinary hearing was held, ECF No. 54 at 3 (citing Ex. B), although the record reflects Mr. Torres was present when the punishment was imposed. ECF No. 54-3 at 2 (Ex. B).

In July 2015, Mr. Torres filed the instant "Motion for Declaratory Judgment" in state court to challenge the "UCC Contraband Rule" as invalid because of "vagueness and arbitrary application." ECF No. 11 at 2. The Department points out that prior to the filing this case, Mr. Torres did not file a Petition to Initiate Rule Making in state court. ECF No. 54 at 4 (citing FLA. STAT. § 120.54(7)(a). Plaintiff did, however, exhaust his administrative remedies in seeking to challenge his disciplinary report. *Id.*

The Department submitted a Declaration of Carter Hickman who is employed by the Florida Department of Corrections as a Correctional Services Consultant.  ECF No. 54-4 (Ex. C).  Mr. Hickman explains in his Declaration that, according to the United States Department of Justice, "sovereign citizens" are persons "who hold extremist beliefs that federal, state, and local governments are operating illegitimately."  ECF No. 54-4 at 3 (Ex. C).  "Sovereign citizens often engage in many fraudulent financial schemes, often targeting government officials with various tactics used to harass, intimidate, and psychologically threaten them."  *Id.*  "These tactics include creating fraudulent liens representing a fabricated debt supposedly owed by the government official to the sovereign citizen."  *Id.*

It is suggested that "sovereign citizens in prison recruit and train new individuals, use legal resources available in prison to craft new pseudo-legal theories, and create fraudulent businesses or engage in identity theft to obtain lines of credit from legitimate banks."  ECF No. 54-4 at 3 (Ex. C).  It is estimated that 300,000 Americans are "using sovereign citizen techniques, a third of which are true sovereign citizen believers, and that number is only increasing due in part to the movement's proliferation in prisons."  *Id.*

"Based on these and other factors, the Florida Department of Corrections considers sovereign citizens to be a Security Threat Group ("STG")."  ECF No. 54-4 at 3 (Ex. C).  "The Department strives to curtail, limit, and restrict the exposure, presence, and the appearance of legitimacy of sovereign citizens as well as that of other STGs, in the state prison system."  *Id.*  The Department "considers and prohibits, as contraband, any item that depicts a sign, symbol, logo, or other identifiers or references, such as codes, to a gang, group or organization identified by [the Department] as posing a threat to the safety and security of the institution."  ECF No. 54-4 at 4 (Ex. C).  The Department considers "any material that instructs in the commission of criminal activity" to be "contraband" and, as such, it "is a clear threat to security and good order of the prisons."  *Id.*

Mr. Hickman opines that "the Rule is needed to control UCC documents and prevent prisoners within FDOC from obtaining the documents, as they can be used to file fraudulent, detrimental, and harmful documents against individuals."  *Id.*  "The Rule specifically addresses and describes documents and terms known to be associated with sovereign citizens which are often the basis of illegal or illicit sovereign activities."  *Id.*

Mr. Torres submitted his own affidavit,[7] declaring that none of his confiscated property "consisted of, involved, nor pertained thereto a copyright name . . . for the purpose of any fraudulent filings, nor fraudulent lien(s) nor the attempt thereof."  ECF No. 58 at 37 (Ex. A).  He states that he pled guilty under "duress," and contends the "DR was actually written for mere 'legal' possession of UCC paperwork."  *Id.*  A second affidavit also declared that the DR did not "specify the acts" he was "accused of committing."  ECF No. 58 at 45 (Ex. A3).  He contends he was not given a "fair and impartial" hearing because the DR charge "did not contain substantial ('reliable') evidence to support the charge."  *Id.* at 46 (Ex. A4).

Mr. Torres also submitted his formal grievance concerning the DR, which asserted that he did not understand the charge as written, and claiming his materials "did not meet the definitive criteria of Ch. 33-602.203(7)."  *Id.* at 41 (Ex. X).  The grievance was denied based on the fact that Mr. Torres entered a guilty plea to the charge.  *Id.* at 42 (Ex. Y).

His grievance appeal to the Secretary's Office complained about not receiving a property receipt for the property taken and also claimed the "description of the infraction was insufficient" and "overly vague."  *Id.* at 43

---

[7] Mr. Torres quotes from case law within his affidavit.  ECF No. 58 at 37-39.  Such quotations are not factual declarations, they are not supported by facts specific or relevant to Mr. Torres.

(Ex. Z).  His appeal was denied and the response declared that the statement of facts provided a sufficient description of the charged violation. *Id.* at 44 (Ex. AA).

## Exhaustion

The Department once again argues that this case should be dismissed because Mr. Torres did not exhaust his administrative remedies. ECF No. 54 at 17.  The Department presses the argument that Mr. Torres should have filed a "Petition to Initiate Rulemaking pursuant to § 120.54(7), Fla. Stat. prior to filing the instant case."  *Id.*  The argument was previously rejected, ECF Nos. 16 and 21, and it should be rejected again.

The Prison Litigation Reform Act [PLRA] requires prisoners to exhaust "such administrative remedies as are available" prior to filing a § 1983 action.  42 U.S.C. § 1997e(a).  The Supreme Court has clarified that exhaustion means "proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 95, 126 S. Ct. 2378, 165 L.Ed.2d 368 (2006) (cited in Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).  "Proper exhaustion" is determined by looking to the requirements of the "prison grievance system."  Woodford, 548 U.S. at 95, 126 S. Ct. at 2388 (stating "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.").  Thus, a prisoner

must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922, 166 L. Ed. 2d 798 (2007). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" Jones, 549 U.S. at 218, 127 S. Ct. at 922-23. The Department's rules require complying with a three-step grievance process; that is all. FLA. ADMIN. CODE R. 33-103. No party has pointed to any directive within either the Inmate Orientation Handbook or the Administrative Rules which directs prisoners to file anything beyond an informal grievance, formal grievance, or grievance appeal.

Moreover, the Rules permit inmates to file complaints about "[t]he substance, interpretation, and application of rules and procedures of the department that affect them personally." FLA. ADMIN. CODE R. 33-103.001(4)(a). Thus, the Department provides inmates with a mechanism to challenge or otherwise complain about Departmental rules. Mr. Torres used the grievance process to challenge Rule 33-602.203. His grievances were denied. ECF No. 1-1 at 14-21. Mr. Torres should be deemed to have exhausted administrative remedies and the argument for "statutory exhaustion" should be rejected.

The recent decision of Ross v. Blake, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016), does not change this conclusion and the Department's reliance on Ross is not on point. *See* ECF No. 54 at 18. In that case, a prisoner sued two guards for abuse following an Internal Investigative Unit's (IIU) investigation and final report which condemn the actions of one of the guards. The prisoner had not filed grievances pursuant to Maryland's "Administrative Remedy Procedure (ARP)" concerning the incident because an officer had initiated the IIU review. Ross, 136 S. Ct. at 1855. The District Court dismissed the case, "holding that 'the commencement of an internal investigation does not relieve prisoners from the [PLRA's] exhaustion requirement.'" 136 S. Ct. at 1855 (citation omitted). A divided Fourth Circuit Court of Appeals reversed, adopting a "special circumstances" exception and concluding the PLRA's exhaustion requirement was "not absolute." *Id.* at 1956 (citation omitted).

The Supreme Court reversed, reiterating that the PLRA's statutory language is mandatory, 136 S. Ct. at 1856 (citing to Woodford v. Ngo, 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), and Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)), yet pointing out that § 1997e(a)'s "exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available

remedies, but need not exhaust unavailable ones."  136 S. Ct. at 1858.

Noting that courts must apply the standard "to the real-world workings of

prison grievance systems," the Court looked to the process required by

"Maryland's Inmate Handbook" to determine what was required to exhaust

administrative remedies.  Ross, 136 S.Ct. at 1859-60.  "When a remedy is .

. . essentially 'unknowable' - so that no ordinary prisoner can make sense

of what it demands - then it is also unavailable."  136 S. Ct. at 1859-60

(citing to Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner

v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("Remedies that rational

inmates cannot be expected to use are not capable of accomplishing their

purposes and so are not available")).  The Court reviewed the process as

set forth in the Inmate Handbook, concluding that when balanced against

examples of how ARP grievances were handled when IIU investigations

were pending, the process was "bewildering" and "perplexing."  Id. at 1860-

61.  The Court remanded the case to consider "whether Blake had

'available' remedies to exhaust," holding only that "[c]ourts may not engraft

an unwritten 'special circumstances' exception onto the PLRA's exhaustion

requirement."  Id. at 1862.[8]

---

[8] The Court pointed out three issues to consider:

First, did Maryland's standard grievance procedures potentially offer relief

The Department makes inconsistent arguments on this point. First, it

is argued that prisoners "must follow the administrative procedures set forth

in Chapter 33 of the Florida Administrative Code." ECF No. 54 at 11-12,

14-15. Then, it argues that "[n]ormally" the typical grievance process is

that set forth in "Chapter 33." However, "[t]he Petition to Initiate Rule

Making Process is a separate process from the normal grievance process

created by FDOC specifically for inmates and described within the Florida

Administrative Code." *Id.* at 14. The Department contends that "[a]lthough

an inmate may exhaust the grievance procedures created by FDOC for

most inmate-related issues, the Petition to Initiate Rule Making Process is

a process which is *required* to be exhausted in order to challenge an

Administrative Regulation promulgated by the Executive Branch Agency:

FDOC." *Id.* at 14-15 (emphasis added). "The normal prisoner grievance

process alone, see 33-103, F.A.C., et seq., is insufficient to properly notice

Defendant about an administrative regulation." *Id.* at 15. "Petitions to

---

to Blake or, alternatively, did the IIU investigation into his assault foreclose
that possibility? Second, even if the former, were those procedures
knowable by an ordinary prisoner in Blake's situation, or was the system
so confusing that no such inmate could make use of it? And finally, is
there persuasive evidence that Maryland officials thwarted the effective
invocation of the administrative process through threats, game-playing, or
misrepresentations, either on a system-wide basis or in the individual
case?

136 S. Ct. at 1862.

Initiate Rule Making alert Defendant to issues with a particular

Administrative Regulation and provides Defendant with an opportunity to

remedy any problems prior to the filing of a law suit." *Id.*

Those arguments are incorrect. First, the Eleventh Circuit has

already rejected the argument that a prisoner's "failure to comply with an

optional administrative procedure does not amount to a failure to properly

exhaust his remedies." Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir.

2008). The statutory process of Chapter 120 is optional because it is not

listed in the Department's grievance procedures, FLA. ADMIN. CODE R. 33-

103. Second, the Supreme Court directs courts to look to the language of

the grievance procedures that are provided to inmates to advise them how

to navigate the grievance process. That process, outlined in Rule 33-103

of Florida's Administrate Code, does not at any point direct prisoners to file

a Petition to Initiate Rule Making pursuant to § 120.54(7) to challenge a

rule. Arguing that inmates must be required to use an unknown and

unwritten remedy goes directly against the Court's directive in Ross to not

engraft "unwritten 'special circumstances'" into the PLRA's exhaustion

requirement. Ross, 136 S. Ct. at 1862. The Department's suggestion to

dismiss this case based on an "unknowable" and unwritten remedy should

be rejected. Ross, 136 S. Ct. at 1859.

Furthermore, it is inconsistent for the Rules to expressly permit inmates to file complaints about "[t]he substance, interpretation, and application of rules and procedures" pursuant to Rule 33-103.001(4)(a) if that grievance process "is insufficient" to notify Defendant of an issue with a rule. Indeed, the statutory process set forth in Chapter 120 is insufficient as well because inmates are excluded from much of Florida's Administrative Procedure Act. <u>Sims v. Jones</u>, No. 4:16cv49-WS/CAS, 2016 WL 7826807, at *4 (N.D. Fla. Nov. 2, 2016), report and recommendation adopted, No. 4:16cv49-WS/CAS, 2017 WL 188138 (N.D. Fla. Jan. 17, 2017) (citing Fla. Stat. § 120.81(3)). Prisoners have a limited ability to challenge agency action and seek judicial review. FLA. STAT. § 120.81(3). Mr. Torres filed grievances challenging Rule 33-602.203 and did all that was required by the Department's grievance procedures. The exhaustion argument was rejected in ruling on the motion to dismiss, and it should be rejected again in ruling on the motion for summary judgment.

**Analysis**

Mr. Torres contends that the Department's "UCC Contraband Rule" is unconstitutional because it is arbitrarily applied. *See* ECF No. 65 at 3. He claims that the rule deprived him of personal property in violation of his due process rights. *Id.* at 7, 12-13. Furthermore, he contends the rule should

be declared "void for vagueness," and claims it does not provide him with "adequate notice."  ECF No. 65 at 11-3-4, 6-18.

Mr. Torres' due process claim is insufficient.  First, Mr. Torres did not lose gain time as a result of the disciplinary report.  The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  While prisoners may "claim the protections of the Due Process Clause," Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974),[9] due process does not exist in a vacuum. Rather, due process exists to protect a liberty interest.  Thus, Mr. Torres must demonstrate that his injury "is within the scope of the Due Process Clause."  Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999).   In Sandin v. Conner, 515 U.S. 472, 484-86, 115 S.Ct. 2293, 2300 (1995), the Supreme Court held that an inmate is entitled to the due process protection outlined in Wolff v. McDonnell only if he can show the deprivation of a "protected liberty interest."  Because Mr. Torres did not forfeit any gain time, he was not deprived of a protected liberty interest.

---

[9] Wolff v. McDonnell held that before an inmate could lose good-time credits, the Due Process Clause requires prisoners be given advance written notice of a charged disciplinary violation, a written statement of factual findings, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.

Mr. Torres did, however, allege that his property was confiscated and has not been returned. His property was seized as "contraband" and he was issued a disciplinary report. Mr. Torres pled guilty to the charge, thus, admitting that he possessed contraband as defined by Rule 33-602-203. A prisoner lacks a protected interest in retaining contraband. *See* <u>Baker v. Piggott</u>, 833 F.2d 1539, 1540 (11th Cir. 1987) (affirming dismissal of due process claim when officer confiscated cash money which was "contraband" under prison rules). Pursuant to the Department's Rules, contraband is retained for use in disciplinary hearings and then stored "until such time as the warden or his designee approves of their being destroyed or disposed of." FLA. ADMIN. CODE R. 33-602.203(8)(a). Because Mr. Torres did not have a lawful right to possess "contraband" property, and he acknowledged that it was contraband by pleading guilty to the disciplinary report,[10] the loss of that property is not protected by due process.

Notably, Mr. Torres contends now that the materials taken were not contraband. ECF No. 58 at 8. He asserts that prison officials lack understanding of what UCC materials are covered by the Rule. *Id.* at 10-

---

[10] To the degree Mr. Torres has argued that he plead guilty to the disciplinary report because he was under duress, *see* ECF No. 65 at 8, that assertion is unexplained and is rejected. Mr. Torres provided no facts which demonstrate that he was coerced to plead guilty.

11.  He claims that he "was given inadequate information about the basis of the charges against him . . . and . . . should not have had to guess what conduct formed the basis for the charge against him."  *Id.* at 11.

In response, the Department argues that Mr. Torres "cannot claim that the Rule was improperly applied to him because he pleaded guilty to a Disciplinary Report for possession of contraband when his 'materials' were taken from him.'" ECF No. 64 at 6.  Further, it is argued that Mr. Torres has misinterpreted the Rule, and the memorandum.[11]  *Id.* at 7.  Moreover, the Department asserts that Mr. Torres is, in reality, seeking "redress of his DR conviction rather than constitutionality of the UCC Contraband Rule as written."  *Id.* at 8.

The undisputed evidence presented in this civil rights case is that Mr. Torres entered a guilty plea to the charge.  A challenge to discipline should be made in a habeas proceeding, not a civil rights case. Furthermore, to the degree Mr. Torres has argued that the evidence was insufficient to support the disciplinary report, he has not come forward with

---

[11]  Notably, the Department submitted as Exhibit F, a memorandum issue to prison wardens which explained UCC schemes, assisted in identifying documents which may be used in fraudulent UCC filings.  ECF No. 54-7 (Ex. F).  That exhibit is dated August 26, 2014, and, thus, was issued well after Mr. Torres received the disciplinary report in January 2013.  It has not been considered or relied upon as evidence because it could not have provided guidance to prison officials in writing a disciplinary report.

*evidence* which demonstrates a genuine dispute of material fact on this point. He has presented argument which appears to be improperly based on an assertion that if his materials did not include a "copyright name" then his disciplinary report was not proper. That is incorrect.

Mr. Torres also has not come forward with any evidence to support his claim that the Rule is arbitrarily applied. There is no evidence which demonstrates officers have not been uniformly applying the Rule or have selectively done so. Beyond Mr. Torres' self-serving claim that his punishment was improper, there is no evidence to support that assertion. Moreover, the premise for his claim is not correct because the Rule does not require that all UCC paperwork include copyright names.

The Rule prohibits possession or the manufacture of "forms" which may be used in filing UCC liens. ECF No. 54 at 23 (citing FLA. ADMIN. CODE R. 33-602.203). The Rule prohibits possessing or manufacturing "publications that promote" the practicing of filing fraudulent UCC liens. *Id.* The Rule prohibits possession of specified UCC forms and financing statements and corrective statements. *Id.* at 23-24. The Rule prohibits documents concerning certain specified UCC schemes, listed with

particularity by name.[12]  *Id.* at 24.  Finally, the Rule prohibits documents

"indicating copyright or attempted copyright of an inmate's name."  *Id.*  It is

clear that the Rule prohibits several different types of documents, and it is

not required that *all* of those types of documents include a purported

copyright for a name.

The Department argues that the "UCC Contraband Rule is neither

overbroad nor void for vagueness."  ECF No. 54 at 31.  The "Rule is clear

in what behavior it is punishing as it describes certain forms and types of

documents with verbiage which Plaintiff and prisoners are not allowed to

possess."  *Id.*  The Department contends the Rule "is extremely explicit in

what is to be considered contraband."  *Id.*  The Court agrees.

As noted above, the Rule provides that inmates may not

"manufacture or possess" forms "that may be used in the fraudulent filing of

Uniform Commercial Code liens and/or publications that promote this

practice."  *See* ECF No. 54 at 23-24 (citing FLA. ADMIN. CODE R. 33-

602.203).  The Rule then provides more specific information, citing names

of forms and names of financing statements.  *Id.* (citing FLA. ADMIN. CODE

---

[12] The schemes include a "strawman," "House Joint Resolution 192 of 1933," the "Redemptive Process," and "Acceptance for Value" presentments.  ECF No. 54 at 23-24.

R. 33-602.203).  Those specifics eliminate any claim that the Rule is vague.

Mr. Torres does not claim *he* did not understand what was prohibited by the Rule.  Rather, he contends the language of the Rule is so vague, prison officials arbitrarily enforce it, notwithstanding the fact that Mr. Torres entered a guilty plea.  Because of the specifics provided in the Rule, and the lack of evidence presented to support that assertion, that argument should be rejected.

It is well established that "(l)awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (quoted in Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974)).  "In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell, 417 U.S. at 822, 94 S. Ct. at 2804.  "Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to

whose custody and care the prisoner has been committed in accordance with due process of law." 417 U.S. at 822, 94 S. Ct. at 2804.

Thus far, the Eleventh Circuit has not applied "strict standards of scrutiny applicable to the constitutional rights of persons in free society" to claims that a prison regulation is unconstitutional because it violates an inmate's constitutional rights. Smith v. Florida Dep't of Corr., 318 F. App'x 726, 729 (11th Cir. 2008). Instead, the Eleventh Circuit has relied upon the Supreme Court's adoption of the "deferential standard" provided in Turner v. Safley. Smith, 318 F. App'x at 729. Under that standard, even though a rule may infringe upon an "inmate's constitutional rights, [it] is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000) (quoted in Smith, 318 F. App'x at 729).

Turner v. Safley, 482 U.S. 78, 89, 91, 107 S.Ct. 2254, 2261, 2263, 96 L.Ed.2d 64 (1987), provided four factors to be considered in determining if a regulation is reasonable: "(1) whether there is a 'valid, rational connection' between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right

will have an impact on prison staff, inmates, and the allocation of prison
resources generally; and (4) whether the regulation represents an
'exaggerated response' to prison concerns."  Hakim, 223 F.3d at 1247-48
(quoted in Smith, 318 F. App'x at 729).

As for the first factor, the Department asserts a "clear legitimate
interest in preventing and reducing criminal activity among its inmates . . . ."
ECF No. 54 at 26.  The Supreme Court noted that "[a]n important function
of the corrections system is the deterrence of crime."  Pell, 417 U.S. at 822,
94 S. Ct. at 2804.  "The premise is that by confining criminal offenders in a
facility where they are isolated from the rest of society, a condition that
most people presumably find undesirable, they and others will be deterred
from committing additional criminal offenses."  Pell, 417 U.S. at 822, 94 S.
Ct. at 2804.  Part of that isolation necessarily includes the removal of
materials from prisoners that provide guides and templates for committing
additional crimes.  There is a "valid, rational connection" between that
interest and the Rule which prohibits UCC materials which are far too often
used to fraudulently (unlawfully) assert harassing liens.  A recent case in
the Middle District of Florida illustrates the extent of this problem.  Granda
v. Middlebrooks, No. 5:10-CV-551-OC-29SPC, 2013 WL 1104645, at *5
(M.D. Fla. Mar. 18, 2013) (noting that "[t]he abusive practice of prisoners

filing baseless liens and/or UCC financing statements for the purpose of

harassment and credit impairment of the alleged debtor (almost always a

state or federal official involved with securing the prisoner's incarceration)

is well documented.").[13]

Under the second prong of Turner, the Court must consider "whether

there are alternative means of exercising the asserted constitutional right

that remain open to" Mr. Torres. In this case, there are alternatives. For

example, Mr. Torres is not forbidden from reading general legal materials

or case law concerning the UCC. There is not a "blanket ban" on UCC

---

[13] The court relied upon Moultrie v. Sec'y Fla. Dep't of Corr., 2010 WL 555559 (M.D.Fla. Feb.10, 2010) (finding inmate's complaint alleging constitutional violations stemming from defendants failure to provide him access to wordprocessor to type his UCC claims frivolous), and the cases cited therein: United States v. Talley, 2007 WL 2208811 at *1 n. 1 (N.D.Fla., July 27, 2007) (quoting Hardin v. Michigan Dep't of Corrections, 2007 WL 1975102, at *6 (W.D.Mich. Mar.28, 2007) (collecting multiple cases, including United States v. Gordon, 2005 WL 2237640 (S.D.Ga. Aug.25, 2005) (prisoner filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); United States v. Orrego, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (prisoner filed fraudulent liens against government officials); Ray v. Williams, 2005 WL 697041 (D.Or. Mar.24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials); United States v. Martin, 356 F.Supp.2d 621 (W.D.Va.2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); United States v. Brum, 2005 WL 1606584 (E.D.Tex. July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); Cooperwood v. McDonald, 2005 WL 1427718 (W.D.Mich. June 13, 2005) (prisoner filed a fraudulent lien against several judges and prosecutors); United States v. Stouder, 2005 WL 2715666 (M.D.Tenn. Sept.2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00). See also Monroe v. Beard, 536 F.3d 198, 208 (3d Cir.2008) (affirming district court's finding that prison regulation banning UCC materials by inmates as contraband was constitutional) (quoted in Granda, 2013 WL 1104645, at *5.

materials. Furthermore, should an inmate have a legitimate need for a UCC form or practice guide, the Rule allows inmates to request advance written authorization from the warden. ECF No. 54 at 24. The Rule only denies "access to specific UCC documents which can be used in the filing of fraudulent liens and frivolous documents." FLA. ADMIN. CODE R. 33-602.203.

The third prong considers whether accommodating the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally. Permitting access to these materials would negatively impact staff as more time would be spent reviewing the lengthy materials submitted through the mail. Resources would also be unnecessarily wasted as multitudes of copies would be requested and made to file what amounts to frivolous cases. Financial harm to persons outside the prison could be avoided by limiting the dissemination of materials designed to harass them.

Finally, the fourth consideration is whether the rule "represents an 'exaggerated response' to prison concerns." Hakim, 223 F.3d at 1247-48 (quoted in Smith, 318 F. App'x at 729). The problem with UCC filings is not insignificant. It is harassing and vexatious litigation, harming both the victim of the UCC scheme and occupying the time of courts which must

wade through the quagmire of sovereign citizen arguments. The rule prohibits materials which have little use inside prison walls while still permitting access to legitimate and needed legal material.

Justice Scalia noted in <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), that prior Supreme Court decisions such as <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), upheld prisoners' "fundamental constitutional right of access to the courts," requiring "prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Lewis</u>, 518 U.S. at 346, 116 S. Ct. at 2177. However, the "right of access" "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." 518 U.S. at 355, 116 S. Ct. at 2182. "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

The fact that Mr. Torres has limited access to UCC materials is not unconstitutional. He has shown no compelling need for those materials in prison, and the harm that they cause in the wrong hands is significant. The Rule Mr. Torres has challenged here has not been shown to be an exaggerated response. It is concluded that, even accepting that the Rule may infringe to some degree on Mr. Torres' First Amendment rights, the limitation imposed is rational, reasonable, and should be upheld. The Rule is not vague or unclear, but rather, is a clear directive on what is not permitted. The Department's motion for summary judgment should be granted and the motion filed by Mr. Torres should be denied.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion for summary judgment filed by the Defendant, ECF No. 54, be **GRANTED,** and the amended motion for summary judgment filed by the Plaintiff, ECF No. 58, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 16, 2017.

 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.